UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
LATIN EVENTS LLC,

                        Plaintiff,                        25-cv-2830 (PKC)

     -against-                                  ORDER

JUNTA CENTRAL ELECTORAL DE LA
REPUBLICA DOMINICANA,

                        Defendants.
--------------------------------------------------------------x

CASTEL, U.S.D.J.

       Plaintiff Latin Events LLC ("Latin Events") moves for the entry of default

judgment against defendant Junta Central Electoral De La Republica Dominica ("JCE") pursuant

to Rule 55(b)(2), Fed. R. Civ. P., and Local Civil Rule 55.2.

       Latin Events commenced this action when it filed a complaint on April 4, 2025.

(ECF 1.)  It has filed an affidavit of service reflecting that service was personally accepted on

behalf of the defendant by Gladys "Doe" at defendant's office at 1501 Broadway in Manhattan.

(ECF 8.)  JCE has not answered or appeared.  The Clerk of Court issued a Certificate of Default

against JCE on October 29, 2025.  (ECF 32.)

       Rule 55(a), Fed. R. Civ. P., provides that default may be entered where a party

has failed to plead or "otherwise defend."  "[A] default is an admission of all well-pleaded

allegations against the defaulting party."  D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d

Cir. 2006) (quotation marks omitted).  But "a court's decision to enter a default against

defendants does not by definition entitle plaintiffs to an entry of a default judgment."

Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry &

Construction, LLC, 779 F.3d 182, 187 (2d Cir. 2015). "[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (quotation marks and brackets omitted).

JCE is "an agency or instrumentality of the Dominican Republic," whose main purpose is to organize and direct electoral assemblies for holding elections, and is a body mandated by the Dominican Republic's constitution. (Compl't ¶¶ 2-4.) On or about October 30, 2023, the parties entered into an agreement wherein Latin Events was to provide certain services in connection with a JCE voter-registration drive directed to residents of New York and neighboring states. (Compl't ¶¶ 12-15.) This included the production of a three-day baseball event at Citi Field, providing 20,000 lunch meals at four restaurants in New York and New Jersey, and arranging radio, television and internet publicity. (Compl't ¶¶ 12-15.) More specifically, JCE agreed to pay Latin Events $600,000 for 15,000 printed tickets to the baseball events, $200,000 for 20,000 lunch meals at specified restaurants for the price of $10 per lunch, and $200,000 for "radio and television publicity in New York on La Mega, Amor, Telemicro and online web publicity . . . ." (ECF 36-1.) JCE also agreed to pay "[a]ll sales, use and similar taxes . . . " (Id.)

Of the total $1,000,000 that JCE agreed to pay Latin Events, an outstanding balance of $838,000 remains. (Compl't ¶ 16.) Felix Cabrera, a principal of Latin Events, has submitted an affidavit sworn before a notary public. (ECF 24.) He states that Latin Events complied with all obligations under its agreements with JCE, but that JCE has made only partial payment. (Cabrera Dec. ¶¶ 7-8.) Latin Events has submitted a copy of the parties' agreement and two invoices written in the Spanish language under a Latin Events letterhead. (See ECF 36.)

- 2 -

The latter invoice, dated June 18, 2024, reflects that JCE fully paid $200,000 owed for Latin Events's media-publicity services and $30,000 for the restaurant meals, leaving an outstanding principal amount of $770,000, plus an additional $68,337.50 in New York sales tax at the rate of 8.875%.  (See id.)  The Complaint brings claims for breach of contract, unjust enrichment and breach of the implied covenant of good faith and fair dealing.  (Compl't ¶¶ 23-38.)

As a threshold issue, the Court concludes that it has subject matter jurisdiction because plaintiff's claims are solely directed to JCE's commercial activities.  As an agency or instrumentality of the Dominican Republic, JCE is immune from suit in the United States courts unless it falls within an exception to the general grant of sovereign immunity.  See, e.g., Carey v. Nat'l Oil Corp., 592 F.2d 673, 676 (2d Cir. 1979).  Specific exceptions are set forth in the Foreign Sovereign Immunities Act of 1976 ("FSIA").  Id.  "Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."  Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993).

The FSIA provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case -- in which the action is based upon a commercial activity carried on in the United States by the foreign state . . . ."  28 U.S.C. § 1605(a)(2).  The statute defines a "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act.  The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  28 U.S.C. § 1603(d).

In applying the immunity exception of 1605(a)(2), a court must identify the particular conduct that the plaintiff's claim is "based upon," considering "those elements that, if

proven, would entitle a plaintiff to relief" and weighing the "gravamen of the complaint." OBB Personenverkehr AG v. Sachs, 577 U.S. 27, 33 (2015) (quotation marks and ellipsis omitted). "[W]hen a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992). "[T]he question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce." Id. (quotation marks omitted; emphasis in original). "[A] contract to buy army boots or even bullets is a 'commercial' activity, because private companies can similarly use sales contracts to acquire goods." Id. at 614-15.

The Court concludes that the immunity exception of section 1605(a)(2) applies to the claims of Latin Events against JCE. JCE entered into a contract with Latin Events for services related to a ticketed three-day baseball event, serving 20,000 lunch meals and a media-publicity campaign. The "particular transaction or act" at issue had a "commercial character," 28 U.S.C. § 1603(d), and JCE engaged in "the type of actions by which a private party engages in trade and traffic or commerce," Republic of Argentina, 504 U.S. at 614. That JCE's ultimate purpose related to a voter-registration drive – a purpose that could be understood to implicate "uniquely sovereign objectives" – does not alter the commercial character of its activities. See id. The Court therefore concludes that JCE is exempt from sovereign immunity in this case and that the Court has subject matter jurisdiction. 28 U.S.C. § 1605(a)(2); Saudi Arabia, 507 U.S. at 355.

The Court concludes that Latin Events has adequately established JCE's liability as a matter of law on its breach of contract claim.  See Mickalis, 645 F.3d at 137.  Specifically, it has submitted a document dated October 30, 2023 that is captioned "Receipt of Tickets" and executed by Yinet Nunez, who has the job title "Encargada OSE New York, JCE," on behalf of JCE.  (ECF 36-1.)  It "certifies to Latin Events LLC" that "JCE has agreed to purchase" 15,000 printed baseball tickets from Latin Events for a total purchase price of $600,000; that JCE "has agreed to purchase from Latin Events" certain additional services, including lunch meals at four La Casa del Mofongo restaurants "for a total of US$200,000"; and "radio and television publicity . . . for a total of US$200,000."  (Id.)  "The total amount payable to Latin Events by the Treasury Department of the Government of the Dominican Republic, by authority of the actual President of the Dominican Republic, Luis Abinader, on behalf of JCE, is US$1,000,000, US$600,000 for the purchase of the JCE Tickets and US$400,000 for the Additional Services. All sales, use and similar taxes shall also be payable by JCE."  (Id.)

Latin Events, through the affidavit of Cabrera, states that it "complied with all of its obligations under the Agreement" but that "Defendant failed, refused, or otherwise neglected to pay the full amount due under the terms of the Agreement."  (Cabrera Dec. ¶¶ 7-8.)  It has submitted two invoices in the Spanish language, one of which reflects that as of June 18, 2024, JCE owed an outstanding balance of $770,000, plus $68,337.50 in New York sales tax at the rate of 8.875%.  (ECF 36-2, -3.)

Latin Events has adequately established the elements of its breach of contract claim, which include the existence of a contract, plaintiff's performance, defendant's breach of contractual obligations, and damages.  See, e.g., 34-06 73, LLC v. Seneca Ins. Co., 39 N.Y.3d

- 5 -

44, 52 (2022).  It also has established that it is owed damages in the liquidated amount of $838,337.50.

Latin Events is also entitled to pre-judgment interest under New York law at the rate of 9% per annum, running from the April 4, 2025 filing of this action through present, see CPLR 5004, and post-judgment interest under 28 U.S.C. § 1961(a).

To the extent that Latin Events seeks costs in the amount of $405.00 (ECF 34), the application is denied.  Latin Events has not identified its costs or provided any supporting documentation thereto.

The Court need not address plaintiff's claims of unjust enrichment and breach of the implied covenant of good faith and fair dealing, as they are pleaded in the alternative and duplicative of the breach of contract claim.

CONCLUSION.

Plaintiff's motion for default judgment is GRANTED.  The Clerk is respectfully directed to enter judgment for plaintiff in the principal amount of $838,337.50, plus prejudgment interest totaling $48,370.93.  Defendant is liable for post-judgment interest under 28 U.S.C. § 1961(a).

The Clerk is respectfully directed to terminate the motion (ECF 23) and to close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       November 21, 2025

- 6 -